| | |
|---|---|
| Daniel Garza<br>PLAINTIFF(S)<br>v.<br>CITY OF LOS ANGELES; Police Officer MARIO CARDONA; Police Chief CHARLIE BECK, in his individual and official capacity; and DOES 1-10, inclusive,<br>DEFENDANT(S). | CASE NUMBER<br>2:16-cv-03579-SVW-AFM<br><br>**JUDGMENT ON THE VERDICT FOR PLAINTIFF** |

This action having been tried before the Court sitting with a jury, the Honorable Stephen V. Wilson, District Judge, presiding; the issues having been duly tried and the jury having duly rendered its verdict.

IT IS ORDERED AND ADJUDGED that the plaintiff:

Daniel Garza

take from the Defendant(s)

CITY OF LOS ANGELES; Police Officer MARIO CARDONA; Police Chief CHARLIE BECK, in his individual and official capacity; and DOES 1-10, inclusive,

consistent with the Court's attached Order. Judgment on the verdict is entered for the Plaintiff in the amount of $210,000 for his § 1983 claims against Defendant Cardona. Judgment on the verdict is entered for the City of Los Angeles on Cardona's crossclaims for indemnification and defense against the City. Judgment as a matter of law is entered for the City of Los Angeles on the Plaintiff's § 1983 claim against the City on the theory of *Monell* liability. Damages, costs, and fees shall be determined by a later stipulation or motion.

Clerk, U. S. District Court

Dated: September 18, 2017

By *Paul M. Cruz*
Deputy Clerk

At: Los Angeles, California

cc: Counsel of record

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | 2:16-cv-03579-SVW-AFM | Date | September 13, 2017 |
| Title | *Daniel Garza v. City of Los Angeles; Mario Cardona; Charlie Beck* | | |

Present: The Honorable  STEPHEN V. WILSON, U.S. DISTRICT JUDGE

| Paul M. Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings:** IN CHAMBERS ORDER DIRECTING THE ENTRY OF JUDGMENT AS A MATTER OF LAW AND ALLOWING JUDGMENT ON THE VERDICT FOR THE CITY OF LOS ANGELES [182].

Plaintiff Daniel Garza ("Plaintiff") brings this action against the City of Los Angeles ("City"), Chief of Police Charlie Beck,[1] and Officer Mario Cardona, for violation of his civil rights under 42 U.S.C. § 1983, in addition to various state law torts.[2] Dkt. 1. The Plaintiff alleges that he was detained, arrested, and handcuffed by Officer Cardona because of a personal vendetta Cardona had against him as the result of the Plaintiff's relationship with Cardona's stepdaughter. The Plaintiff brought § 1983 claims for excessive force against Cardona as well as municipal liability claims against the City and Chief Beck ("City Defendants"). Additionally, Cardona has brought crossclaims against City Defendants for failure to indemnify and defend him as required by state law.

The claims in this case that remained when trial began can be divided into three categories: 1) the Plaintiff's § 1983 claim against Defendant Cardona; 2) the Plaintiff's § 1983 claim against the City based on *Monell* liability; and 3) Cardona's crossclaims for defense and indemnification against the City. Judgment on the verdict has already been entered for the Plaintiff with regards to his § 1983 claim against Defendant Cardona. Dkt. 182. For the following reasons, the Court will now DIRECT entry of judgment as a matter of law for the City with regards to the Plaintiff's § 1983 *Monell* claim and

---

[1] The Plaintiff brought claims against Chief Beck in both his official and individual capacities. The Court dismissed all claims against Chief Beck before trial. Dkt. 150.
[2] The Plaintiff dismissed his state law tort claims prior to trial.

:

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | 2:16-cv-03579-SVW-AFM | Date | September 13, 2017 |
| Title | *Daniel Garza v. City of Los Angeles; Mario Cardona; Charlie Beck* | | |

will ALLOW judgment on the verdict for the City with regards to Cardona's crossclaims.

## I. FACTUAL AND PROCEDURAL BACKGROUND

While many of the facts in this case were disputed by the parties, a jury has now rendered verdicts in two separate phases of trial, thus resolving the most significant and relevant factual disputes. The Court will review the varying factual accounts presented by the parties to the jury[3] and how the jury resolved the relevant disputes. The Court will then analyze the remaining legal questions with regards to the two claims on which judgment as not been entered –Defendant Cardona's crossclaims for indemnification and defense against the City and the Plaintiff's §1983 claim against the City.

### A. Plaintiff and Villanueva's Relationship

Plaintiff Garza and Defendant Cardona had been neighbors since late 2012/early 2013. Dkt. 74, UMF ¶ 1. Cardona was living with his wife, Cherie, who had a daughter named Naomi Villanueva ("Villanueva").

In September 2013, the Plaintiff and Villanueva began to date. Dkt. 74, UMF ¶ 7. Cardona and Cherie forbid the Plaintiff from dating Villanueva because they believed the Plaintiff was too old for Villanueva. Dkt. 74, UMF ¶ 8. The Plaintiff was 24, and Villanueva had just turned 18. *Id.* at ¶ 10. Despite Cardona and Cherie's disapproval, the Plaintiff and Villanueva secretly dated. *Id.* at ¶ 11. The date on which the couple broke up and which person broke up with the other was disputed at trial.

### B. Night of May 1, 2015

Cardona and the Plaintiff presented the jury with diametrically opposing descriptions of what occurred on May 1 and 2, 2015. The Court notes that the night of May 1, 2015, initially appeared significant to the jury's determination of the Plaintiff's claims, as the Plaintiff originally contended that he was illegally seized due to Cardona's personal feelings toward the Plaintiff. However, during trial

---

[3] The Court will cite to pretrial briefing in its summary of the parties' factual accounts, as the pretrial accounts of the parties mostly coincided with the evidence presented at trial. However, the Court will note when the evidence presented at trial differed from or supplemented the pretrial evidence if relevant to the Court's findings in this Order. The Court will also note the jury's findings and how they resolved certain factual disputes between the parties.

                                                       :

Initials of Preparer             
                                          PMC

| CV-90 (10/08) | CIVIL MINUTES - GENERAL | Page 2 of 17 |
|---|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:16-cv-03579-SVW-AFM | Date | September 13, 2017 |
|---|---|---|---|
| Title | *Daniel Garza v. City of Los Angeles; Mario Cardona; Charlie Beck* | | |

the Plaintiff decided to drop the illegal seizure claim and proceed solely on his excessive force claim. Therefore, because the question of whether probable cause supported Cardona's initial seizure of the Plaintiff was no longer at issue in the case, the background motivations of Cardona became less relevant to the questions before the jury. However, the background events remain somewhat relevant because they were heard by the jury and they may have played a role in the motivations of the parties.

Cardona alleged that on the night of May 1, 2015, the Plaintiff entered Villanueva's bedroom via the window without her knowledge or consent. Dkt. 91, SGI ¶ 60. When Villanueva and her roommate asked the Plaintiff to leave, the Plaintiff left and returned with a metal baseball bat from his trunk. *Id.* at ¶¶ 61, 62. The Plaintiff then grabbed Villanueva's arm, and without her consent, took her to his car. *Id.* at ¶ 63. The Plaintiff drove around for fifteen to twenty minutes while holding Villanueva against her will. *Id.* at ¶ 65. The Plaintiff forced Villanueva to go to Cardona's house and knocked on the door, while Villanueva screamed for her mother. On the early morning of May 2, 2015, Cardona watched Plaintiff flee his house and did not follow him. *Id.* at 67. Villanueva and her roommate both testified at trial and generally presented this account to the jury, with some minor inconsistencies.

According to the Plaintiff, on the night of May 1, 2015, Villanueva opened the front door of her apartment for him and they went into her room together to talk. Dkt. 94, PSSUMF ¶ 126. The Plaintiff asked Villanueva if Michael, whom the Plaintiff believed Villanueva was "hooking up with," was at the residence, and she admitted he was. *Id.* at ¶¶ 177, 129. When the Plaintiff told Villanueva they were done and walked out of the residence, Villanueva followed him saying she needed to talk to him. *Id.* at ¶¶ 130, 132-33. Villanueva got into the passenger's side of the car willingly and they drove directly to Cardona's home. *Id.* at ¶¶ 135-36. When Villanueva said that the Plaintiff would never be able to see her again if he went home without talking to her, the Plaintiff began knocking on Cardona's door and ringing the doorbell. *Id.* at ¶ 137. Villanueva then got out of the car, approached the door and began yelling "Mom, Mom, Mom, Mom." *Id.* Villanueva ran inside as soon as the door opened, and Cardona told Plaintiff to "get the fuck off the property." *Id.* at ¶ 136. Plaintiff backed away and said, "That's fine. I don't want anything to do with her. I caught her cheating on me." *Id.* Plaintiff then walked home. *Id.* The Plaintiff testified extensively at trial about these events and reiterated that he broke up with Villanueva.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:16-cv-03579-SVW-AFM | Date | September 13, 2017 |
|---|---|---|---|
| Title | *Daniel Garza v. City of Los Angeles; Mario Cardona; Charlie Beck* | | |

### C. Incident Report

On May 2, 2015, Villanueva and Cherie went to the Downey Police Department to report the incident. Dkt. 94, PSSUMF ¶ 139. However, Villanueva told the officer she did not want to prosecute, so they did not file an incident report. *Id.* at ¶ 140.

On the morning of May 14, 2015, Cherie filed an incident report[4] on her own with the Downey Police Department and so informed Cardona via text message. *Id.* at ¶ 141; dkt. 74, UMF ¶ 19. Cherie testified at trial about filing this report and notifying Cardona that a report had been filed. She testified at trial that the report was filed by the Downey police as a professional courtesy. The report did not consist of an arrest warrant and did not have any binding legal significance.

City Defendants emphasized that Cardona was only aware that a report had been made, and that he was not aware of its specific allegations. Dkt. 74, UMF ¶ 20. On the other hand, the Plaintiff contended that Cardona knew "what kind of report would have been taken" since Cardona stated that as a police officer, he was able to "put a title to all of the crimes that [he believed Garza] had done." Dkt. 94, PSSUMF ¶ 145. According to Cardona, although he did not talk with his wife regarding the specifics of the police report, he expected that the report would document the fact that the Plaintiff had committed a burglary, kidnapping, and domestic violence. Dkt. 91, SGI ¶ 76. He also testified that he understood at the time that the report would not have immediately led to an arrest warrant for the Plaintiff.

### D. May 14 Incident

Cardona and the Plaintiff again presented diametrically opposing descriptions to the jury of what occurred on May 14, 2015. The parties' opposing descriptions of the May 14 incident constituted the center of this case and undoubtedly created the most significant factual dispute the jury was asked to resolve.

According to the Plaintiff, on May 14, 2015, at approximately 11:30 a.m., he was exercising in front of his house when Cardona pulled his truck into his own driveway across the street. Dkt. 94,

---

[4] Cherie testified that she went to make a report, not an incident report. Dkt. 91, SGI ¶ 19.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-03579-SVW-AFM | Date | September 13, 2017 |
|---|---|---|---|
| Title | *Daniel Garza v. City of Los Angeles; Mario Cardona; Charlie Beck* | | |

PSSUMF ¶ 28.   Getting out of his truck, Cardona yelled, "Hey, come here," at the Plaintiff.   *Id.* at ¶ 54.   They met at the corner of the Plaintiff's property, and Cardona then hit Plaintiff on the right side of his head with his left fist.   *Id.*   The Plaintiff testified that Cardona punched him four to six times while he was standing.   *Id.* at ¶ 57.   Cardona then caused the Plaintiff to fall to the ground on his side by grabbing the Plaintiff's sweater, *id.* at ¶¶ 58, 59, and punched the Plaintiff at least twenty times.   *Id.* at ¶ 60.   At Cardona's request, his mother, who had been in the car with him, brought him his bag, which contained LAPD handcuffs.   *Id.* at ¶ 63.   Cardona handcuffed the Plaintiff's right arm and threatened to break Plaintiff's shoulder unless Plaintiff gave Cardona his left arm.   *Id.* at ¶ 65.   The Plaintiff pulled out his left arm, and Cardona pulled it back hard and handcuffed it.   *Id.*   Cardona straddled Plaintiff, while he was laying down on his stomach, and twisted the Plaintiff's wrists for an extended period of time, despite the fact that Plaintiff was not resisting.   *Id.* at ¶ 66.   The Plaintiff notes that although he did not attempt to strike or resist Cardona at any time, Cardona commanded the Plaintiff to "stop resisting" loud enough for witnesses to hear.   *Id.* at ¶ 67.   The Plaintiff claims he was handcuffed for at least 20 to 25 minutes while Cardona was on his back. *Id.* at ¶ 75.   While the Plaintiff and his witnesses testified at trial in much greater detail regarding what was said and done during the altercation, the important factual allegations presented to the jury remained consistent.

According to Cardona, when he had arrived home and was trying to remove his baby from the car seat, the Plaintiff yelled at him from his front yard, "What the fuck are you looking at?   I don't care that you're a police officer.   I'll kick your ass."   Dkt. 91, SGI ¶ 78.   Cardona responded by stating, "Fuck you," which he claims is an example of tactical language consistent with the LAPD training he received.   *Id.* at ¶¶ 79, 80.   The Plaintiff continued making threatening comments, and started advancing on Cardona and his family with clenched fists, telling Cardona to meet him in the street.   *Id.* at ¶ 81.   When they met at the intersection, the Plaintiff threw a punch at Cardona's face but Cardona deflected it to his chest.   *Id.* at ¶ 87.   Using leg sweeps, Cardona took the Plaintiff to the ground.   *Id.* at ¶ 89.   Cardona used the LAPD handcuffs his mother brought him from his car to handcuff the Plaintiff.   *Id.* at ¶ 96.   Cardona claims that the Plaintiff kept moving his head from side to side, kicking his legs, and trying to get up despite his command to stop resisting.   *Id.* at ¶¶ 91, 92.   Cardona claims he never struck, kicked, or punched Plaintiff in any way during the process of getting control over Plaintiff.   *Id.* at ¶¶ 93, 94.   Again, Cardona testified at trial in greater detail but generally consistent with this initial description.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:16-cv-03579-SVW-AFM | Date | September 13, 2017 |
|---|---|---|---|
| Title | *Daniel Garza v. City of Los Angeles; Mario Cardona; Charlie Beck* | | |

### E. 911 Calls

There was no dispute at trial among the parties that Cardona called 911 twice. Dkt. 94, PSSUMF ¶ 69. However, the parties highlighted different aspects of the call at trial. City Defendants emphasize that in the first call, Cardona identified himself as an off-duty Los Angeles police officer because Department policy requires officers to so identify themselves whenever dealing with a law enforcement agency from another jurisdiction. Dkt. 74, UMF ¶ 36. City Defendants also note that Cardona made no mention of his status as a police officer in his second 911 call. *Id.* at ¶ 37. The Plaintiff emphasizes that when Cardona called 911 he told the dispatcher he "took a kidnap suspect into custody" and stated "[t]here's a report with Downey. We took it this morning." Dkt. 94, PSSUMF 69. The Plaintiff also states that on the 911 call, Cardona described the situation as "Code 4", a situation "when the suspect is in custody and there is no longer a threat." *Id.* at ¶¶ 69, 70. Cardona stressed that he said he had a kidnap suspect in the 911 calls so the sheriffs would come faster. Dkt. 91, SGI ¶ 101. The City also took this view, noting that Cardona told the 911 operator that he had a kidnapping suspect in order to get local law enforcement officers to respond more quickly than if he had told them he just had a battery suspect. Dkt. 74, UMF ¶ 42.

### F. Bystanders

While waiting for local authorities to arrive, Cardona told passerby, including another off-duty LAPD Officer Garcia, that he was a police officer and the Plaintiff was a kidnapping suspect in a report made at the Downey Police Department that morning. Dkt. 74, UMF ¶ 38. Garcia recognized that Cardona was a law enforcement officer based on Cardona's attire and his use of police tactics. Dkt. 91, SGI ¶ 98. Garcia testified that he did not see Cardona strike or hit the Plaintiff in any way, and that Cardona seemed to have everything under control. *Id.* at ¶ 106. Garcia stated that Cardona was "cradling" the Plaintiff by maintaining a top position, which he recognized as a standard LAPD technique to control a suspect and to prevent escape. *Id.* at ¶ 108. Garcia also saw that Cardona used a wrist lock to keep the Plaintiff under control. Garcia stated he did not see any injuries on the Plaintiff. *Id.* at ¶ 107. When Cardona told Garcia that he had control of the incident, Garcia gave Cardona his contact information if it was needed for any reason and left the scene. *Id.* at ¶ 113; dkt. 94, PSSUMF ¶ 78. Garcia testified at trial.

Daniel Laughlin, one of the bystanders, began videotaping the incident on his phone. When he

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:16-cv-03579-SVW-AFM | Date | September 13, 2017 |
|---|---|---|---|
| Title | *Daniel Garza v. City of Los Angeles; Mario Cardona; Charlie Beck* | | |

told Cardona, "Wow, that looks like it hurts," Cardona responded, "Yeah, it does, now get back." Dkt. 94, PSSUMF ¶ 74. Laughlin testified he was aware Cardona was an officer because he addressed himself as Officer Cardona of LAPD on a phone call, loud enough for witnesses to hear. *Id.* When other bystanders told Cardona to let the Plaintiff go, Cardona responded that he would not let the Plaintiff go because he has a "kidnap suspect out of Downey." Dkt. 91, SGI ¶ 112. The Plaintiff played the video that Laughlin took for the jury, which began after Cardona had already taken the Plaintiff to the ground and handcuffed him. However, the video included footage of the wrist lock used by Cardona on the Plaintiff after he was handcuffed and the Plaintiff's cries of pain. Laughlin also testified for the jury about his observations and actions that day.

### G. Investigation

When Sgt. II Hoskins and Sgt. II Wehr, Cardona's supervisors, arrived at the scene, Cardona was placed on-duty from the beginning of the incident and was ordered to submit overtime slips for all those hours. Dkt. 91, SGI ¶ 115. Captain, now Commander, Prokop was in agreement. *Id.* Sgt. II Hoskins testified that under the circumstances, Cardona's actions were within LAPD policy. *Id.* at ¶ 118. Prokop testified that at the time of the incident, he believed Cardona was acting in the course and scope and employment with the LAPD when he arrested the Plaintiff. Dkt. 94, PSSUMF 88. Prokop has since changed his position and stated that Cardona should have called 911 and waited for back up before addressing the Plaintiff. *Id.* at ¶¶ 89, 90. A protection detail was subsequently assigned and surveillance cameras were installed to protect Cardona and his family from the Plaintiff. Dkt. 91, SGI ¶ 117.

After a completed nine-month investigation, the LAPD sent a letter to the Plaintiff informing him that three of his allegations of misconduct were determined to be "unfounded," meaning that the allegation did not occur, and that the fourth allegation was determined to be "exonerated," meaning that the action occurred but was found to be within LAPD policy. Dkt. 91, SGI ¶ 122; dkt. 94, PSSUMF ¶ 95. The Internal Affairs Investigation and the Use of Force Investigation were both completed before the letter was sent to Plaintiff on February 29, 2016. Dkt. 91, SGI ¶ 123. The letter reflects that both investigations were concluded in Cardona's favor. *Id.* The Plaintiff claims that internal affairs had the discretion to broaden the investigation to determine whether Cardona violated policy but they did not do so. Dkt. 94, PSSUMF ¶ 97.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:16-cv-03579-SVW-AFM | Date | September 13, 2017 |
|---|---|---|---|
| Title | *Daniel Garza v. City of Los Angeles; Mario Cardona; Charlie Beck* | | |

The Court did not allow the parties to present evidence of the LAPD investigation at trial, as the Court found such testimony to be irrelevant and unduly prejudicial. The jury was asked to determine whether Cardona acted with excessive force; conclusions from police officers or experts regarding whether Cardona acted with excessive force would inappropriately infringe on the province of the jury. However, several police experts and officers testified about the LAPD wrist lock policy and when the use of a wrist lock was within policy and when it was not.

### H. Trial

The Court separated the phases of the trial into discrete parts. Trial began on June 21, 2017, with the first phase of trial addressing the liability of Cardona for the Plaintiff's § 1983 claim. Dkt. 158. As discussed above, the Plaintiff's § 1983 claim against Cardona eventually consisted of only his excessive force claim, as he decided not to pursue his unlawful seizure claim. The jury was told that in order to prevail on his §1983 claim against Cardona, the Plaintiff needed to prove that Cardona acted under color of state law and that his actions deprived the Plaintiff of his rights under the laws of the United States. Dkt. 171. The Court told the jury that a "person acts 'under color of state law' when the person acts or purports to act in the performance of official duties under any state, county, or municipal law, ordinance or regulation." *Id.* After three days of trial, the jury returned a verdict for the Plaintiff, finding that Cardona was liable to the Plaintiff under § 1983. Dkt. 174.

After the jury returned a verdict for the Plaintiff on the first phase of trial, a second phase of trial began the following Monday. To start, the Court asked the jury a clarifying question regarding their previous verdict. The Court asked the jury whether they found that Cardona had "acted" in the performance of official duties, as they might have found that Cardona merely "purported" to act in the performance of his official duties in finding that he acted under color of state law. Dkt. 171. After briefly deliberating on the question, the jury answered that they had found that Cardona had "acted in the performance of his official duties."

After the Court received the answer to this question, the second phase of trial began. Dkt. 181. The second phase of trial involved the damages suffered by the Plaintiff and lasted one day, at the end of which the jury returned a verdict. Dkt. 181. The jury was asked two questions as a part of phase two: "What damages did Plaintiff Daniel Garza suffer as a result of Defendant Mario Cardona's conduct?" and "Did Defendant Mario Cardona act with malice towards Plaintiff Daniel Garza?" Dkt. 186. The

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:16-cv-03579-SVW-AFM | Date | September 13, 2017 |
|---|---|---|---|
| Title | *Daniel Garza v. City of Los Angeles; Mario Cardona; Charlie Beck* | | |

jury answered "210,000.00" on the first question and "Yes" on the second question. *Id.* After the second phase of trial was complete, the only remaining claim that had not been decided by the jury was the Plaintiff's § 1983 claim against the City under a *Monell* theory of liability. The Court informed the parties that this Order would issue addressing that claim.

## II. LEGAL STANDARD FOR JUDGMENT AS A MATTER OF LAW

In ruling on a post-trial motion for judgment as a matter of law, a court may enter judgment against a party as a matter of law if "a reasonable jury would not have a legally sufficient evidentiary basis to find for [that] party" as to an issue on which that party has been fully heard during trial. Fed. R. Civ. P. 50(a), (b). In making this determination, courts may not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Go Daddy*, 581 F.3d at 961. A court "may not substitute its view of the evidence for that of the jury." *Johnson*, 251 F.3d at 1227. "In ruling on the renewed motion [under Rule 50(b)], the court may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law." Fed. R. Civ. P. 50(b).

## III. DISCUSSION

As the Court stated before, there were three claims at issue in this case when the jury trial started: 1) the Plaintiff's § 1983 claim against Defendant Cardona; 2) Defendant Cardona's crossclaims for defense and indemnification against the City; and 3) the Plaintiff's § 1983 claim against the City based on *Monell* liability. The Court now finds that all three have been resolved by the jury or are now resolvable by this Court as a matter of law. This Order will enter judgment on all three claims, either on the verdict or as a matter of law, which will complete this litigation.

### A. Plaintiff's § 1983 Claim Against Defendant Cardona

The easiest claim to address is the Plaintiff's § 1983 claim against Defendant Cardona as an individual. The first phase of trial addressed Cardona's liability for the Plaintiff's § 1983 claim. In a general verdict, the jury found for the Plaintiff on that claim. Dkt. 174. In the second phase of trial, the jury awarded $210,000 in damages to the Plaintiff on the § 1983 claim against Cardona. Dkt. 186. The Court has already entered judgment on the verdict. Dkt. 182. However, the Court found that the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:16-cv-03579-SVW-AFM | Date | September 13, 2017 |
|---|---|---|---|
| Title | *Daniel Garza v. City of Los Angeles; Mario Cardona; Charlie Beck* | | |

action had not ended for all claims and the Court had not made a ruling under Rule 54(b), meaning the action had not ended as to the Plaintiff on this claim. Dkt. 193. Now that final judgment has been entered with respect to all claims and parties, final judgment is also entered with respect to the Plaintiff's § 1983 claim against Cardona. The Plaintiff is entitled to $210,000 from Cardona on this claim.

### B. Defendant Cardona's Crossclaims Against the City

The City stated to the Court during a pretrial conference that the City will usually indemnify and defend its officers when they are the targets of § 1983 lawsuits. However, the City usually does this as a matter of policy, not as a matter of law. In this case, the City chose not to indemnify or defend Cardona because it believed he was acting out of personal malice for the Plaintiff, not as a police officer legitimately arresting a suspect. As a result, Cardona was forced to bring defense and indemnification crossclaims against the City in an attempt to force it to pay his legal bills and any judgment against him.

The California Tort Claims Act immunizes public entities from liability except as provided by statute. *See Eastburn v. Regional Fire Port. Auth.*, 31 Cal.4th 1175, 1179 (2003); Cal. Gov't Code § 815(a). In California, a public entity has a statutory duty to provide for the defense of current or former employees who are sued civilly for acts committed in the course and scope of their employment. *See* Cal. Gov't Code § 995. However, there are exceptions to this duty to defend. For instance, a public entity may refuse to provide for the defense of an employee if the public entity determines that the act was outside the scope of the person's employment; the person acted out of actual fraud, corruption, or actual malice; or if the defense would create a specific conflict of interest. Cal Gov't Code § 995.2(a). On the other hand, if the employee was acting within the course of his employment and did not act with actual fraud, corruption, or actual malice, he can recover the costs and expenses of his defense. Cal. Gov't Code § 996.4. Similar exceptions exist with respect to the public entity's duty to indemnify its employees against civil claims or judgments against them. *See* Cal. Gov't Code § 825.2.

In other words, the indemnification and defense statutes create a burden-shifting analysis. First, in order to be entitled to reimbursement from the public entity, the employee must demonstrate that he was acting within the scope of his employment in order to be entitled to indemnification and defense. Cal. Gov't Code § 995. Then, if the employee meets his burden on that prong, the public entity may still refuse to defend or indemnify the employee if it can show that the employee acted or failed to act

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-03579-SVW-AFM | Date | September 13, 2017 |
|---|---|---|---|
| Title | *Daniel Garza v. City of Los Angeles; Mario Cardona; Charlie Beck* | | |

because of "actual fraud, corruption, or actual malice." Cal. Gov't Code § 995.2(a)(2); Cal. Gov't Code § 825.2(b).

Cardona and the City disagreed with respect to both prongs of the analysis. The City contended that Cardona was not acting within the scope of his employment because he was engaged in a private altercation with his stepdaughter's ex-boyfriend. Cardona claimed that he was making an arrest of a kidnapping and assault suspect as part of his duties with the LAPD. The City also contended that even if Cardona was acting within the scope of his employment, he acted with actual malice during the incident, thus relieving the City of its duty to indemnify or defend Cardona.

The Court now finds that both disputes have been resolved by the jury. In the first phase of trial, the jury found for the Plaintiff on the § 1983 claim against Cardona, meaning they must have found that he either acted or purported to act in the performance of his official duties. The Court clarified with the jury whether they found that Cardona actually acted in the performance of his official duties rather than merely purported to act. The jury clarified that they found that Cardona acted in the performance of his official duties. While the analysis for whether a person acted under the color of state law question is not identical to the analysis regarding the scope of his employment, the Court found that the jury's decision necessitated a finding that Cardona was acting within the scope of his employment during the altercation. Thus, Cardona met his initial burden, meaning the City had to show that Cardona was acting with actual fraud, corruption, or actual malice in order to avoid liability.

The Court addressed the second prong of the analysis during the second phase of trial. The evidence that had been presented by the parties clearly demonstrated that Cardona's actions only could have involved malice, not corruption or fraud. Thus, in addition to calculating damages for the Plaintiff as the result of Cardona's § 1983 violation, the jury was also asked, "Did Defendant Mario Cardona act with malice towards Plaintiff Daniel Garza?" Dkt. 186. Malice was defined for the jury as Defendant Cardona acted with the "intent to cause injury or that his conduct was despicable and was done with willful and knowing disregard of the rights or safety of another. A person acts with knowing disregard when he or she is aware of the probable dangerous consequences of his or her conduct and deliberately fails to avoid those consequences. 'Despicable conduct' is conduct that is so mean, vile, base, or contemptible that it would be looked down on and despised by reasonable people." Dkt. 183. The jury answered the question of whether Cardona acted with malice with "Yes."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:16-cv-03579-SVW-AFM | Date | September 13, 2017 |
|---|---|---|---|
| Title | *Daniel Garza v. City of Los Angeles; Mario Cardona; Charlie Beck* | | |

The jury's finding that Cardona acted with malice towards the Plaintiff is fatal to his crossclaims for indemnification and defense against the City. As stated above, the City is not obligated to indemnify or defend Cardona if it can show that he acted with malice. Cal. Gov't Code § 995.2(a)(2); Cal. Gov't Code § 825.2(b). The jury's finding of malice means that the City has satisfied its burden and cannot be forced to indemnify or defend Cardona. Thus, the Court ENTERS judgment on the verdict with respect to Cardona's crossclaims for the City. Cardona takes nothing from the City.

### C. Plaintiff's *Monell* Claim Against the City

The one claim that has not been resolved by the jury is the Plaintiff's § 1983 claim against the City under a theory of *Monell* liability. The City brought a motion for summary judgment on the Plaintiff's *Monell* claim before trial. Dkt. 73. In the motion, the City argued that it could not be held liable for Cardona's actions because there was no evidence that an unconstitutional policy, practice, custom, or ratification by the City caused the alleged constitutional violation. *Id.* at 10-13. In opposing the motion, the Plaintiff attempted to raise triable issues of fact regarding the City's *Monell* liability using two theories. First, the Plaintiff argued that the City ratified Cardona's unconstitutional behavior when a policymaker of the City sent a letter to the Plaintiff informing him that his complaints were either "Unfounded" or "Exonerated," meaning that Cardona's actions were justified, lawful, and proper. Dkt. 92 at 15-18. Second, the Plaintiff briefly argued that the wrist lock utilized by Cardona was pursuant to the training and policy of the LAPD. *Id.* at 19. The Plaintiff supported this contention with deposition testimony from Cardona and Sergeant Hoskins, stating that the application of a wrist lock while the Plaintiff was handcuffed was justified under LAPD policies. Hoskins Depo., 90:5-25; Cardona Depo Vol I., 272:1 – 273:15, 274:15 – 275:13. Thus, the wrist lock policy itself could form the basis of the City's liability under *Monell*.

In ruling on the motion for summary judgment, the Court found that the letter sent by a representative of the City to the Plaintiff "does not constitute ratification by a policy-maker sufficient to raise triable issues of fact that City Defendants should be subject to municipal liability." Dkt. 150 at 12. While the parties may refer to the previous order for the full analysis, the Court's general finding was that the letter could not form the basis of *Monell* liability because the City was forced to make factual determinations about what had transpired between the Plaintiff and Cardona. *Id.* These factual determinations did not lay out a municipal policy, and they did not ratify unconstitutional conduct. *Id.* at 12-13. Instead, the letter stated that Cardona's actions, as determined by the City,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:16-cv-03579-SVW-AFM | Date | September 13, 2017 |
|---|---|---|---|
| Title | *Daniel Garza v. City of Los Angeles; Mario Cardona; Charlie Beck* | | |

were justified and proper. *Id.* at 13. Such a statement is not equivalent to ratifying unconstitutional actions such that the City must also be liable for Cardona's constitutional violations. Without any further evidence that the City had a policy of condoning unnecessarily painful or unconstitutional actions, the Plaintiff's evidence involving the letter was insufficient to create a triable issue of fact regarding *Monell* liability. *Id.* Any other finding would open up municipalities to liability whenever the City's investigation of an officer's actions came to different factual conclusions than a jury's findings regarding § 1983 violations. Such liability is not allowed under *Monell*, and therefore the Plaintiff's argument regarding the letter was dismissed by the Court.

Even though the Plaintiff's first theory of *Monell* liability was dismissed at the summary judgment stage, the Court found that the Plaintiff's second theory of *Monell* liability survived summary judgment. The Plaintiff provided some evidence that a potentially painful wrist lock was used against a non-resisting suspect, and that such a practice was consistent with LAPD policy. *Id.* at 14. Such a scenario is the prototypical example of *Monell* liability: a municipal policy that instructs officers to commit unconstitutional excessive force. Thus, the Plaintiff's *Monell* claim based on the wrist lock used by Cardona survived summary judgment. *Id.* The Court also noted that the letter sent by the City could be used as evidence that Cardona's use of the wrist lock was consistent with LAPD policy and thus might still be relevant to the *Monell* claim under a theory of an unconstitutional policy even though it was insufficient to sustain an independent *Monell* claim under a theory of ratification. *Id.*

However, after the evidence presented by the Plaintiff at trial, the Court now finds that the Plaintiff cannot sustain a *Monell* claim against the City as a matter of law. The Court allowed the *Monell* claim to go forward because the Plaintiff presented some evidence during summary judgment that Cardona's actions, which the jury found unconstitutional, were consistent with LAPD policy. *Id.* If the jury found both that Cardona's actions were unconstitutional and also consistent with LAPD policy, the City would be liable for its own unconstitutional policy and the constitutional violations that the Plaintiff suffered as a result.

Instead, the Plaintiff presented evidence at trial that Cardona's actions were *not* consistent with LAPD policy. Plaintiff's counsel elicited testimony from multiple police witnesses that using a wrist lock, which was described at trial as the manipulation of a handcuffed suspect's finger in order to cause pain, on an unresisting suspect was inconsistent with LAPD policy and therefore constituted excessive force. *See, e.g.,* Direct Examination of Justin Wade, 4:11-20, June 22, 2017 ("Q: Officer Wade, is it

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-03579-SVW-AFM | Date | September 13, 2017 |
|---|---|---|---|
| Title | *Daniel Garza v. City of Los Angeles; Mario Cardona; Charlie Beck* | | |

within LAPD policy to apply a wrist lock when an individual is in the prone position handcuffed and not resisting? A: No."); Cross Examination of Gregory Hoskins, 15:8-16, June 22, 2017 ("Q: If an individual is prone on the ground, handcuffed and not resisting, is it appropriate pursuant to Los Angeles Police Department policy to use a wrist lock in a manner to cause pain to that person? … A: No, it wouldn't be appropriate."); Direct Examination of Antonio Garcia, 8:6-10, June 22, 2017 ("Q: And when you train those officers, you train those officers that unless the person is resisting when they're handcuffed prone on the ground, there's no reason to apply a pain-compliance technique, correct? A: Correct, sir.") While Cardona understandably attempted to present evidence that the wrist lock was within the department policy,[5] the jury's verdict in favor of the Plaintiff made it clear that the jury accepted the Plaintiff's version of events and rejected Cardona's.

Thus, there is no dispute of fact between the two parties involved in the *Monell* claim – the Plaintiff and the City – that Cardona acted outside of LAPD policy when executing the wrist lock. The City has consistently maintained that all of Cardona's actions violated LAPD's policies regarding arrest procedures. Indeed, the City's theory throughout the case has been that all of Cardona's actions, including the wrist lock placed on the Plaintiff while he was not resisting, were not consistent with LAPD policy because Cardona was acting as an angry stepfather, not as a level-headed police officer. As stated above, during trial the Plaintiff also presented evidence that Cardona's use of the wrist lock violated LAPD policy because the Plaintiff was not resisting at the time of the restraint, and the wrist lock was a procedure used specifically to subdue resisting suspects through pain. This arrest strategy was described at trial as a "pain compliance" technique. Thus, the two sides agreed at trial that Cardona's use of the wrist lock exceeded the amount of force that the LAPD trains its officers to use on unresisting suspects. In other words, there is no triable issue of fact regarding whether the wrist lock was consistent with LAPD policy because both relevant parties agree that it was not. Although Cardona argued that he acted within policy, he is not a party to the Plaintiff's *Monell* claim.

---

[5] Cardona did not dispute that he used the wrist lock and finger manipulation on the Plaintiff even after the Plaintiff had been handcuffed. Indeed, it would have been implausible for Cardona to dispute he used the wrist lock on the handcuffed Plaintiff, as the video showed him doing just that. Instead, Cardona claimed that the Plaintiff was resisting during the arrest, and that therefore the wrist lock was necessary to subdue a resisting suspect per LAPD policy. Thus, the factual dispute resolved by the jury was not whether the wrist lock occurred, but rather whether the Plaintiff had been resisting, as the Plaintiff's resistance determined whether Cardona's use of the wrist lock constituted excessive force. Ultimately, the jury decided that the Plaintiff had not been resisting and that therefore the wrist lock constituted excessive force.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:16-cv-03579-SVW-AFM | Date | September 13, 2017 |
|---|---|---|---|
| Title | *Daniel Garza v. City of Los Angeles; Mario Cardona; Charlie Beck* | | |

Without at least a question of fact remaining that Cardona acted consistent with LAPD policy when he violated the Plaintiff's constitutional rights, the Plaintiff cannot satisfy the causation element of a *Monell* claim. In order to succeed on a *Monell* claim against a government entity, a plaintiff must demonstrate that the policy or custom he has identified actually caused the constitutional violation that he suffered. *Ulrich v. City & County of San Francisco*, 308 F.3d 968, 984 (9th Cir. 2002). Further, a plaintiff must show that the custom or policy had a "direct causal link" to the deprivation of the plaintiff's constitutional rights. *Wallis v. Spencer*, 202 F.3d 1126, 1143 (9th Cir. 1999). The Plaintiff cannot satisfy the causation element because he agrees that Cardona did not act consistently with LAPD's wrist lock policy. By acknowledging that Cardona did not act pursuant to an official LAPD policy, the Plaintiff has not raised a triable issue of fact that the City's actions caused his constitutional deprivation, as Cardona's relevant actions were undeniably not encouraged or aided by a policy that he did not actually follow. The LAPD's policy certainly could not be a "moving force" behind the Plaintiff's constitutional harm, as required for a *Monell* claim, as both sides acknowledge that the Plaintiff exceeded the force allowed under the policy. *Chew v. Gates*, 27 F.3d 1432, 1444, 1456 (9th Cir. 1994). As a result, the Court must find for the City on the Plaintiff's *Monell* claim as a matter of law, because there is no triable issue for the jury to determine as to whether the City's policy "caused" the Plaintiff to suffer a constitutional deprivation at the hands of Cardona.

Finally, the Plaintiff cannot now change his argument regarding whether Cardona acted consistent with LAPD policy because of the doctrine of judicial estoppel. "Judicial estoppel, sometimes also known as the doctrine of preclusion of inconsistent positions, precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600-01 (9th Cir. 1996) (citing 18 Charles A. Wright et al., *Fed. Practice and Proc.* § 4477 (1981 & Supp. 1995); *Yanez v. United States*, 989 F.2d 323, 326 (9th Cir. 1993)). However, a party must succeed in the prior proceeding in order to be precluded by judicial estoppel in a later proceeding, as otherwise there is no risk of inconsistent court determinations and thus little threat to judicial integrity. *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001).

The circumstances of this case and trial proceedings provide precisely the risk of inconsistent court determinations and the threat to judicial integrity that the doctrine of judicial estoppel was designed to prevent. As discussed thoroughly in this Order, the Plaintiff repeatedly argued to the jury during the first phase of trial that Cardona's actions used more force to restrain the Plaintiff than was

:

Initials of Preparer    PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | 2:16-cv-03579-SVW-AFM | Date | September 13, 2017 |
| Title | *Daniel Garza v. City of Los Angeles; Mario Cardona; Charlie Beck* | | |

justified under LAPD policy. In fact, the Plaintiff's central argument to the jury regarding why Cardona's use of force should be found excessive was that LAPD policy stated that the wrist lock used by Cardona was only appropriate for resisting suspects, and the Plaintiff was not resisting. The Plaintiff then prevailed in the first phase of trial using that argument, as the jury found for the Plaintiff on his § 1983 claim against Cardona. Therefore, allowing the Plaintiff to now take an inconsistent position during the *Monell* phase of trial by arguing that Cardona's actions were in fact consistent with LAPD policy would directly threaten judicial integrity. In other words, the Plaintiff proved to the jury that Cardona was liable to the Plaintiff because his actions exceeded LAPD policy regarding the wrist lock, and he now wishes to hold the City liable for its policy by arguing that Cardona acted consistent with that policy. Thus, the Plaintiff seeks to gain an advantage in the *Monell* phase of the trial by taking a position that is directly incompatible with the argument he used to prevail in the individual liability phase of the trial. This is the exact use of inconsistent positions to gain an advantage and the threat to judicial integrity that judicial estoppel precludes. Thus, the Plaintiff cannot now pursue his *Monell* claim against the City, as he cannot show that the LAPD policy caused his constitutional harm without resorting to an inconsistent position that is precluded by the doctrine of judicial estoppel.

Because the only theory of *Monell* liability that survived summary judgment was that the wrist lock policy was unconstitutional, the Court now finds that the Plaintiff has not raised a triable issue of fact regarding the City's liability for the Plaintiff's § 1983 claim. The City cannot be liable for Cardona's actions because the Plaintiff convinced the jury that Cardona acted excessively when he violated LAPD policy with respect to when a wrist lock should be employed. Thus, the LAPD's wrist lock policy could not have caused the constitutional violation experienced by the Plaintiff. That violation is attributable to Cardona alone because the jury agreed with the Plaintiff that Cardona violated LAPD policy when he utilized excessive force during his arrest of the Plaintiff. Thus, the Court DIRECTS the entry of judgment as a matter of law for the City on the Plaintiff's § 1983 *Monell* claim.

### IV. FINAL JUDGMENT

As described above, this Court withheld entering final judgment on any claims because not all claims had been adjudicated under Rule 54(b). Dkt. 193. All claims in this action have now been adjudicated. The action is now ended as to all claims, and final judgment is entered with respect to all claims. The time period for post-trial motions will begin at the filing of this Order.

_____ : _____

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:16-cv-03579-SVW-AFM | Date | September 13, 2017 |
|---|---|---|---|
| Title | *Daniel Garza v. City of Los Angeles; Mario Cardona; Charlie Beck* | | |

### V. ORDER

For the foregoing reasons, the Court ALLOWS final judgment on the verdict for the Plaintiff in the amount of $210,000 for his § 1983 claim against Defendant Cardona.

The Court ALLOWS judgment on the verdict for the City on Cardona's crossclaims for indemnification and defense against the City.

The Court DIRECTS the entry of judgment as a matter of law for the City on the Plaintiff's § 1983 claim against the City on the theory of *Monell* liability.

IT IS SO ORDERED.